docket 21-2044. Originally the case was set for argument in May, but as sometimes happens, events intervened and accordingly this is the sole case that we will be hearing today and we will be hearing it by Zoom. Mr. Dolan, we would be pleased to hear your argument when you're prepared. Thank you, Your Honor. Again, my name is Daniel Dolan. I'm plaintiff's counsel for Environmental Dimensions in this case and this case involves basically a contract dispute between a subcontractor, the defendant in this case, and my client who is a prime contractor for packaging waste at Los Alamos National Laboratory, the legacy waste that was destined to be returned to the waste isolation pilot plant in Carlsbad, New Mexico. My client, which I will mention here in a moment with my timeline, was basically denied substantive due process in this case by the third magistrate judge in the district court and I'll explain how that feeds into the orders of the second magistrate judge and the conduct of the plaintiff's defense counsel in this particular case. This entire matter involves a discovery dispute which took place over two and a half years. The defense counsel in this case lied to the court and lied to the plaintiff's counsel about the existence of a settlement agreement that it entered into with the Los Alamos Nuclear Security, which was the overarching contractor for the Los Alamos National Laboratory. That discovery dispute went on for two and a half years. Let me interrupt you because you say that the dispute went on for two and a half years, but in fact the discovery might have gone on that long, but the dispute is another question, which is to say that at least the allegation is that you were very slow in filing motions to compel and otherwise. How do you respond to that and that you never gave a good reason for that? Your Honor, the rationale for that was that we were actually approaching discovery as a three-pronged issue. We had issued a FOIA request to the Department of Energy. We had issued a subpoena for a discovery deposition of the manager for lands, the other side of the agreement. Basically, we knew that we were in a protracted dispute with a plaintiff. The defense counsel was arguing that the document didn't even exist. All we were left with was the supposition, the rumor mill at Los Alamos that said that the document did exist. In fact, it was being negotiated behind our back. We had no knowledge of that. We never got a privilege log where we could ask the judge to see that document. We were looking for the document and we had no belief that it even existed because the defense counsel was arguing that it didn't exist. We took that three-pronged attempt to find that document. Mr. Barnett was denied. Counsel, did I interrupt? I guess I'm not hearing you answer unless I missed it. I'm not hearing you answer Judge Phillips' question. I think my understanding is one of your arguments is that the district court should have reopened discovery, but the district court denied that on procedural grounds, as I'm recalling, saying that you waited many months after fact discovery had closed. I'm not sure I'm hearing you make any argument as to why any good cause, what prevented you from seeking to extend discovery? Well, we didn't actually seek rediscovery. Mr. Barnett used up the two and a half years with his protracted motions opposing our motion to compel and other documents. No matter what opposing counsel did, you have an obligation to comply with the court's deadlines, discovery deadlines, scheduling deadlines, all of the above. I guess I'm failing to see what prevented you from doing so here. You have to show good cause and the specifically address your responsibility. I think we showed good cause because during this discovery process, Your Honor, we had no information that the document even existed, so we had no way to actually enter into arguments that the document did exist. We were still fighting over whether the document existed at all. As we moved forward in this case, we were attempting to get the document under a FOIA request, and we thought that that was adequate. We knew the court knew that we were looking at it from that perspective, and the time was simply being consumed by the defense counsel. We considered that the case was ongoing and that we had document 123 from Judge Ritter saying that the document was probative and that it should be given to us under the discovery rules, under Rule 26. When was that order issued? That order, I believe, took place in 2017-2018. So before the discovery deadline had expired. That's correct. In addition, there was the third-party discovery request that we did, which was timely. Mr. Barnett jumped in and we spent many months arguing over whether or not he had the right to quash that deposition notice. That was also very timely. The court actually opined that Mr. Barnett had claimed that the document didn't exist and therefore lacked standing to actually object to the third-party deposition. Mr. Barnett also— On another discovery point, can you clarify what your argument is as to the confidentiality order that was an agreed order, as I understand it? The court entered the agreed order that the parties both agreed to, but yet now, as I understand it, you're objecting and suggest that the court has some kind of independent responsibility— That's correct, Your Honor. Not to enter the agreed order? No. The confidentiality order was in there because we were requesting transcripts of the interviews, the court-reported interviews that were taken under sworn statements of the Energy Solutions people and the Lands people that were on the packaging line when the negligent packaging of those drums took place. And that confidentiality order was basically over those specific interviews that we were requesting from the Department of Justice. We had made the FOIA request to the DOE headquarters and Albuquerque operations office as well as the headquarters, and that FOIA request was operational, was going on while the discovery was still— I'm asking you to crystallize on what your appellate argument is regarding the confidentiality order. Yes, Your Honor. How did the district court abuse its discretion with respect to the confidentiality order? Certainly. And I'll explain exactly why we don't believe the confidentiality order applied to this particular document. The FOIA request was basically given to us by an email from the Department of Justice dated June 17, 2019. That document, they said, here's the confidential settlement agreement that Mr. Barnett entered into with Lands. It was part of a FOIA request. It was not a discovery request to the defense at this point at all. And Mr. Barnett injected himself into that process. We did not obtain the settlement agreement from Mr. Barnett. We were supposed to obtain it under our FOIA request. Mr. Barnett immediately, in order to interject himself into that process, sent an email to me. What did the district court do? How did the district court abuse its discretion? I'm still not hearing you get to that. Not what Mr. Barnett did, but how the district court erred. That's what we're focusing on, on appeal. The district court allowed Mr. Barnett to claim that he had produced the document when the document was really produced under the FOIA request. So it was not Mr. Barnett's ability, and therefore the court had no authority to impose the confidentiality agreement on that document. It was separate discovery, self-help discovery that the plaintiff did in this FOIA request. Mr. Barnett's interjection by providing the document was only so that he can control the narrative. Is there a particular term of that order that you object to, or is it the entire thing? No, it's just the fact that Mr. Barnett interjected himself by providing the document to me three days after the FOIA request was honored, and the Department of Justice says, here's the document. We're going to give it to you when you resolve this issue. All right. Well, it's your argument. You're nine minutes in, and we really haven't gotten to any merit, so we're going to abide the clock and just ask you to hit what you think is the most important for us to know. I think the most important thing, Your Honor, is that Mr. Barnett hid the document for two and a half years. That settlement agreement contains two other documents that we think are significantly and important to the plaintiff's case. There was a preliminary notice of claims, and there was a term sheet that was negotiated between Lands and Energy Solutions, and those documents explain the negligence of the defendant in this case. We never received those documents. They have never been produced. They were never put on a privilege log. The court never had an opportunity to review them. The third magistrate judge in this particular case then and allowing us to reopen discovery for documents that Mr. Barnett hid for two and a half years from the court and from the plaintiff. Your Honor, those are the key takeaways from this particular case, that Mr. Barnett was rewarded for opposing the plaintiff's action to obtain that settlement agreement and the other two documents that were in that settlement agreement for two and a half years. At a motion to compel, the district court, the third magistrate judge says, we're not timely. We're not allowed to get supplementation, but Rule 26 requires supplementation right up to the day of trial. Mr. Barnett never supplemented the settlement agreement and provided the preliminary notice of claims document, which documents... I don't think you raised that. That seemed to be a new argument in your appeal brief, that this was somehow required to be a supplement to the initial disclosures. Did you ever make that argument below? Well, it was part of our motion to compel, Your Honor. We used the motion to compel because under Rule 26, Mr. Barnett is required to supplement. Did you make that particular argument below? I believe we did, Your Honor. Okay. The bottom line here, Your Honor, is that Mr. Barnett was rewarded with a denial of reopening discovery just for the sole purpose of finding these two documents, exploring the negligence with the people who negotiated that document. My client, contemporaneously, if you look at the timing of these things, the AIB report came out in March of 2015, and not two weeks later, my client gets a notice to reduce its workforce. And 30 days later, my client gets a contract termination notice and loses its $70 million five-year contract because Energy Solutions failed to show this settlement agreement to them so that they could be replaced. And under our contract with Energy Solutions, they could truly have been replaced. Do you intend that the settlement agreement says that? No. Stop the clock. We're at 2.20 and Mr. Dolan has frozen up. Are you back with us, Mr. Dolan? Oh, I'm sorry. Okay. We just missed about the last 10 seconds of what you said, so I'll give you that much extra at the end. I'm not sure what 10 seconds I lost, but what happened here was the contract that we had with Energy Solutions was for our prime contract and his being a subcontractor to my client under the rules. That contract said that Energy Solutions was required to provide any information to my client, the prime contractor, if it was going to have any impact on the process or on the contract. Okay, but you're headed off on another point. My question is, did LANS ever say that the reason that your client lost out or it exercised its discretion not to award you more business was because of Environmental Solutions? Does it ever say that, including in the settlement agreement? No. No, Your Honor, it did not, but all you have to do is look at the timeline to see that the AIB report comes out in March of 2015 and less than two weeks later, my client gets a workforce reduction request and one month later, this is contemporaneous with the AIB report showing 12 lines of negligence on the part of Energy Solutions. And so, we think a jury would find that the contemporaneous nature of the contract, you know, being closed out, the termination notice that we received was in fact caused by Energy Solutions negligence on the packaging line while the two contracts were still going on, while my client was ramping up and their client was ramping down. Okay, are you wanting to save the rest of your time for the pause here? No, Your Honor, what I want to point out is that my client was denied substantive due process in this case because the defendant lied about the document even existing for two and a half years. And yes, we'll suck up the fact that we didn't push really hard to get this additional discovery, but we had three different ways to get that discovery. And lo and behold, the FOIA request shows the discovery up and then Mr. Barnett tries to interject himself by preventing that document from being used by us in further discovery in the case. So, our client was denied substantive due process in this matter. All right. Well, your time has expired, Mr. Dolan. Thank you for your argument. We will now turn to Mr. Barnett. Good morning, Your Honors. And you referenced the rescheduling of this and I appreciate the circumstance there that necessitated the rescheduling. So, thank you. As mentioned, I'm Jim Barnett, counsel for the Defendant Appellee Energy Solutions Government Group. I might refer to them as ESGG or Energy Solutions today and refer to the plaintiff and appellant, Environmental Dimensions, Inc. as EDI. Getting to the end of this litigation has been a long time coming for my client. EDI has been wrongfully withholding ESGG's payment for the underlying services for seven years now using this litigation to forestall Energy Solutions recovery. Despite having forwarded Energy Solutions invoices for this work to the government for payment, receiving that payment and keeping that payment, all while falsely claiming to the federal government and LANS, Los Alamos National Security, the government contractor, to have paid Energy Solutions when in fact they had not. EDI's appeal is a tale of untimely motions and fatal admissions. Their claims were never based on more than supposition. I'd be happy to answer any questions you have at the outset, provide a little bit more background, or I can jump to some key points. I'll go ahead and jump to a couple of key points. I want to respond to the thrust of what EDI's counsel just argued about this being a supposed lie and a hiding of the settlement agreement. For starters, the settlement agreement's been produced. There is no error. They have it, and so whatever they're complaining about is harmless at this point in time. Regarding whether or not we denied its existence, that's simply not true. I'm reading to you from our discovery responses initially when they were first propounded by EDI to Energy Solutions. They had a specific request asking for the settlement agreement, and we had an objection that outlined our concerns, and what we said is you have a lot of discovery questions pointed at Energy Solutions' prior contract with LANS, to which you are not a party, to which you are not a party. The WIP incident occurred during the timeline, and by the way, if you want to see a helpful timeline, maybe look at A311. It's a helpful timeline to understand the two concurrent contracts we're talking about here, but whatever happened between us and LANS in the performance act contract and then the WIP incident, that's not relevant to your claims, and so we objected on the basis of burdensome, it being unduly burdensome, it being overbroad, and it being irrelevant, and specifically with regard to the settlement agreement, this is what we said. Beyond discovery aimed at the issue of notice, that would be the notice that we gave to EDI, the facts underlying the WIP incident and any alleged liability or settlement agreement between Atkins Energy and LANS are irrelevant to EDI's claims and defenses. The settlement agreement has now been produced, and it's not uncommon for settlement agreements to have provisions that make it a potential violation of the settlement agreements to even disclose their existence, so we were careful to talk about it in terms of calling it an alleged settlement agreement, but we never denied the existence of the settlement agreement, so we go ahead and make those objections, and time goes by. It keeps going by, and we extend the discovery cutoff by an additional seven and a half months, and so we're coming up to the there's no motion. Well, let me back up. Before the discovery cutoff, they made a motion to compel the settlement agreement, and they made the motion 10 months after the deadline for filing that motion. Under the New Mexico federal court local rules, a party must make a motion to So their deadline for making that objection was in May of 2017. It wasn't until March of 2018 that they ultimately moved to compel. When they did move to compel, we of course argued it was untimely, and the trial court agreed. The trial court said they hadn't argued excusable neglect or good clause, and they also procedurally were deficient because they were required by rule to include a copy of the discovery request and responses, and so the magistrate judge, I don't have that in front of me, and then EDI failed to file a reply brief in support of their motion to compel, and so the trial, I mean the magistrate judge said this is a paltry effort. Those were his words, and so the motion to compel was denied. So the district court didn't ever get to the merits of the motion to compel. It was just based on procedural grounds, wasn't it? The timeliness. So he argues, I mean, if we get past the procedural issue, or if we find that to be an abuse of discretion, I guess he argues that the delay did prejudice EDI. How do you counter that? Well, in response to the motion to compel, we of course argued on the merits as well, that it was not relevant, and we strongly believe that it wasn't relevant. Having said that, I'll acknowledge that when they later filed a subpoena, I think Mr. Dolan misspoke and said it was a FOIA request where they ultimately obtained settlement agreements under a subpoena to the Department of Energy and the National Nuclear Security Agency, and the magistrate judge there ruled that they were entitled to the settlement agreement, but again, they got the settlement agreement, so where's the harm in that? And Mr. Dolan made reference to other documents, but when he filed his motion to compel the settlement agreement, that was the only document he asked for in that motion to compel, both by the title of the motion, the prayer for relief, and all of the argument talks exclusively about the settlement agreement. I want to talk just briefly about the standard review on all of these procedural issues. Of course, your honors are aware that this is an abuse of discretion standard, and that standard dictates that only arbitrary, capricious, whimsical, and manifestly unreasonable acts should be overturned, and that's for good reason. The trial court's there in the trenches with the parties over a long period of time and understands many things that are going on about how the rulings came about and the circumstances that are going on, so appellate courts should be loath to overturn those. In this particular case, there were 223 docket entries before the notice of appeal. Of those, the district court issued 41 orders, and 27 of those orders relate to discovery and case management, including multiple orders sanctioning EDI. In fact, more than six months before the running of the discovery cutoff, the magistrate judge, in denying one of EDI's motions, said, quote, this is March 5th, 2018, the court hereby admonishes plaintiff and warns that its failure to comply with this court's in the future could lead to more severe sanctions. EDI regularly missed deadlines. For a discussion of some of those, you can look at the supplemental appendix at 187 and at the appendix at 1007 footnote one, at least seven or eight times, if not more. So it's against this backdrop that you have to see all of these procedural arguments that EDI is making at this point in time. They were not denied substantive due process. They simply didn't timely pursue their claims. They moved to compel untimely. And then that motion to compel, when they were denied, they still had three and a half months till the discovery cutoff. And what did they do? They didn't do anything. Then we notified them that we were preparing to September. The discovery cutoff was going to run here shortly. It runs. And then right before we're going to file our summary judgment motions after the court ordered that we could file as many as we wanted, they went and filed their motion to reopen discovery two months after the running of the discovery cutoff. They didn't even argue excusable neglect or good cause existed. And the magistrate judge, in doing that, outlined the Smith factors and said, here's the analysis. And as I mentioned, the judge said that their their efforts were paltry. So then we flash forward all the way. But at that point, when they filed the motion to reopen discovery, did they have the settlement agreement? I'm trying to remember the timing of it. I think they did not have the settlement agreement. He's suggesting that you were well aware through this whole time that they were taking this multi-pronged approach to getting a settlement agreement. It certainly didn't. How would it prejudice you knowing that they had been after this for some time and you were refusing to produce it? They end up getting it another way. How does that prejudice you to reopen discovery when you you're well aware they're still seeking it? Well, and the court addressed that issue. And the court, I think, wrongly stated that there wasn't a lot of prejudice to us, but it said under the Smith factors, it still found that there was no good reason to reopen discovery. However, I disagree with the court on that conclusion. We had invested more than two years in discovery. We had prepared motions for summary judgment covering the breadth of the case. We laid out our entire case strategy, all of our thoughts and thinking on the case and why the case should be dismissed. And so I think that extremely prejudicial for them to be able to come in with a benefit. But you didn't produce the settlement agreement and you hadn't produced it at that point. That's true. We hadn't produced it. I mean, it had been the subject of a motion to compel and the court had denied their motion to compel. We did ultimately produce the settlement agreement after the court issued its ruling on the subpoenas. And again, there's nothing in the settlement agreement that says anything that supported their claims. You have heard about it a lot today and you would have heard about it all throughout all the filings. There's nothing in the settlement agreement that supports their claims. If they thought that there was going to be a settlement agreement that said, you know, we admit fault and nevermind the fact that that dealt with a prior contract and a prior contract regime, the settlement agreement simply didn't say anything of the sort. And if they, if it did say something like that, it would have been splashed all throughout their papers. So there's the settlement agreement made no difference to this case. If it would be helpful, I'd like to turn for a moment to the merits as well. There hasn't been any evidence put forward by EDI in this case in support of its claims. It's mostly argument of counsel and supposition. The only thing that they attempt to point to is this accident investigation board report to the AIB report to that document is not fairly before the court. It is inadmissible hearsay. And contrary to the arguments that counsel made in their brief, we did in fact, raise the issue below. And the court in referencing the lower court in referencing the AIB report noted our objection and said she was not ruling on it, but merely recited some of the portions of the AIB report because she found that they didn't even support EDI's claims in the first place. So that is the only thing that, that EDI has ever put forward that is that show that they think show something. The, the district court judge found it doesn't and did not rule on whether or not it was inadmissible hearsay. Of course it's inadmissible hearsay. It's an out of court statement offered to show the proof of the matter asserted and the document that was supplied isn't even close to the full document. There wasn't any foundation laid and in terms of its conclusions and things like that, none of that veracity has been tested. So if you turn to what the actual evidence in this case is, it's a mountain of admissions by, by EDI that foreclosed all of their claims. First of all, there's no dispute that there was a contract. First, there was a contract that was, by its own terms, terminated upon the entry of the subcontract agreement, which the parties entered into in 2013. Both of those agreements have an express provision that energy solutions was entitled to a minimum of 35% of the share of labor. Throughout this case, EDI has claimed that it was a maximum. That was the most we could do there. And not only do the was in fact a minimum and that we could exceed it. Significantly, they also acknowledge that we could, that at the outset of this performance, that it was going to be energy solutions heavy in terms of the percentage of work. That's because energy solutions was already on jobsite. They were the incumbent performer. Everybody knew that their percentage was going to be well in excess of 35% in the beginning stages. Was there any upper limit? There was no upper limit. Well, as you know, EDI uses the total contract price and the 35% and I think it's 70 million. I don't remember. Why is that not a good argument that there is a limit? So for starters, I think that that reference is from the teaming agreement, which by its terms have expired. For another reason, we're talking about MTOA2. And MTOA2 is a series of potential contracts over time that's going to be broken into a bunch of different task orders. And so the federal government said at most, we're going to have $200 million potentially under MTOA2. And so if you take a 35%, that's $70 million that could be energy solutions share. And the EDI team winning every single teaming agreement and the federal government having, sorry, every single task order. And it's dependent upon the federal government issuing enough task orders to come up to that full amount. None of those things were ever going to happen. But it's undisputed in this case, the energy solutions total payment was $3.5 million. It came nowhere within any seeing distance of $70 million. Do you have any further questions? I'd be happy to answer any further questions. It looks like not. And because you went over 30 seconds, Mr. Dolan, I'm going to give you 30 seconds for rebuttal, but I'm going to hold you to the 30. So make a big point if you've got one. Your microphone might be off. My client was clearly still denied the substantive due process in this case. Mr. Barnett kept that document hidden for two and a half years. He never addressed the fact that that document, that settlement agreement that took two and a half years for us to get and which we had asked the court to compel the production of, contains another reference to another document called the Preliminary Notice of Claims and also a second document called Term Sheet, which is a document of mediation. Those documents were never produced, never on a privileged log, Your Honor. Okay. Thank you both for your arguments. The case is submitted.